UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PAULA DINU,

                              Plaintiff,

        -against-

NORTHWELL HEALTH INC.
PHELPS MEMORIAL HOSPITAL ASSOCIATION,
MICHAEL J DOWLING, EILEEN EGAN, TRACY FEIERTAG,
MICHAEL GLENNON, AND CAROLYN BASSINAS,

                          Defendants.
------------------------------------------------------------------x

**COMPLAINT**

**25 Civ. 3281**

**("*Dinu* V")**

    PLAINTIFF PAULA DINU, through the DIEDERICH LAW OFFICE complains of the DEFENDANTS as follows:

### PREFATORY STATEMENT

1.     This is an action for damages and injunctive relief against defendants Northwell and Phelps Memorial for their discriminatory and retaliatory termination of Plaintiff's employment, in violation of, *inter alia*, the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e ("Title VII"),  the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. ("ADA"), and parallel provisions of the New York State Human Rights Law.

2.     Ms. Dinu originally claimed gender and disability discrimination against Northwell in a lawsuit she filed in 2022.  *See*, *Dinu v. Northwell Health*, Dutchess County Index No.  2022-52531 and Appellate Division No. 2023--8373. ("***Dinu I***") (appeal pending).

3.     On or about November 2, 2022, Ms. Dinu also filed a charge of unlawful discrimination and reprisal against Northwell, based upon gender, disability and reprisal, against Northwell and Phelps Hospital, resulting in EEOC administrative review that culminated in Ms.

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
INDEX NO. 2022-52531
NYSCEF DOC. NO. 22
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC   Document 1   Filed 04/21/25   Page 2 of 20

R. 230

Dinu being issued a Notice of Right to Sue dated January 30, 2025.

## THE PARTIES

4.      Plaintiff Paula Dinu is, and was at all times relevant herein, citizen of the United States and a resident of the Town of Fishkill, County of Dutchess, State of New York.

5.      Defendant Northwell Health, Inc. (hereinafter "Northwell"), upon information and belief, is and at all times relevant herein was a not-for-profit corporation organized and existing under the laws of the State of New York.

6.      Defendant Phelps Memorial Hospital Association ("Phelps Memorial"), upon information and belief, is and at all times relevant herein was a not-for-profit corporation organized and existing under the laws of the State of New York, with central offices located at Phelps Hospital, 701 North Broadway Sleepy Hollow, NY 10591, in the County of Westchester, State of New York.

7.      Defendant Michael J. Dowling ("Defendant Dowling" or "CEO Dowling") is the president and chief executive officer of Northwell Health and, upon information and belief, resides in Nassau County in the State of New York, and is sued in his individual capacity as an "aider and abettor."

8.      Defendant Eileen Egan ("Defendant Egan" or "CEO Egan") is the chief executive officer of Northwell Health's Phelps Hospital and, upon information and belief, resides in Westchester County in the State of New York, and is sued in her individual capacity as an "aider and abettor."

9.      Defendant Tracy Feiertag ("Defendant Feiertag" or "Asst. CEO Feiertag") is the Assistant CEO of Northwell Health's Phelps Hospital and, upon information and belief, resides in Putnam County in the State of New York, and is sued in her individual capacity as an "aider and abettor."

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22

INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7.25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 3 of 20

R. 230

10.     Defendant Michael Glennon ("Defendant Glennon" or "VP Glennon") is an Assistant Vice President of Northwell Health, at Phelps Hospital, and, upon information and belief, resides in Fairfield County in the State of Connecticut and is sued in his individual capacity as an "aider and abettor."

11.     Defendant Carolyn Bossinas ("Defendant Bossinas" or "Ms. Bossinas") is an employee of Northwell Health, at Phelps Hospital, and, upon information and belief, resides in Westchester County in the State of New York, and is sued in her individual capacity as an "aider and abettor."

12.     Plaintiff Paula Dinu ("Ms. Dinu") is a resident of Fishkill, New York, in the County of Dutchess.

13.     Upon information and belief, the corporate defendants are joint enterprises, joint employers and/or integrated employers operated for the personal benefit of Northwell.

14.     Northwell is the, and at all times relevant was, the sole "member" of Phelps Memorial, and as such, controls Phelps Memorial.

15.     Northwell, at the time of Ms. Dinu's demotion in May 2022 and termination in 2023, had, and has, final say over both the discharge of management-level employees of Phelps Hospital and final say regarding settlement of litigation involving Phelps Hospital (and Phelps Memorial).

## JURISDICTION AND VENUE

16.     This court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and under 28 U.S.C. § 1331 and § 1343(4).

17.     Venue is proper in this Court.

R. 230

## FACTS

### A. Overview

18.     Plaintiff Paula Dinu is a 51-year-old woman who has worked at Phelps for over 15 years.

19.     Because of her educational background, experience, continuing educational, clinical and professional advancement in her field, Plaintiff advanced to the position of Director of Speech and Audiology ("Director") at Phelps Hospital.

20.     Plaintiff served in the position of Director for almost six years, until she was pretextually criticized and then demoted four levels in May 2022, immediately after complaining of unlawful discrimination, harassment and reprisal, and thereafter fired in January 2023, on pretextual grounds that, even if arguendo accepted as true as asserted by Defendants, did not warrant termination.

### B. Sex Harassment by VP Glennon

21.     After Plaintiff took over the position of Director, she began reporting directly to Assistant Vice President Michael Glennon.

22.     As his "direct report," VP Glennon began to directly supervise Plaintiff.

23.

24.     With their new one-on-one relationship, VP Glennon had the opportunity to engage in flirtatious and otherwise sexually inappropriate conduct toward Plaintiff.

25.     Specifically, he began to treat her in a highly sexist fashion, and he began to engage in behaviors that objectively and subjectively amounted to sexual harassment, altering the terms and conditions of Plaintiff's employment at Phelps due to her gender.

26.     As a few examples of VP Glennon's sexual harassment, he did the following:

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22

INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7.25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 5 of 20

R. 230

    a. Deceived Plaintiff into meeting him alone at a bar;

    b. Touched her inappropriately at a holiday party.

    c. Repeatedly texted her after-hours, with content that included sexual innuendo, flirtatious or sexually suggestive content.

27.    Such sexist conduct by VP Glennon continued throughout 2021 and into 2022.

28.    Plaintiff was not the only victim of VP Glennon's sexual inappropriateness, and it appears that some women succumbed (or at least did not object to) to his sexist conduct within Phelps Hospital.

29.    Both CEO Egan and Asst. CEO Feiertag were informed of, and thus knowledgeable about, VP Glennon's inappropriate behaviors, as was, presumably, Northwell Health CEO Dowling.

30.    Perhaps because of VP Glennon's age (in his 70s) and a possible age discrimination case by him against Northwell Health if his employment was terminated, his superiors chose to have a blind eye, and ignore, his misconduct, leaving Plaintiff and other women unprotected.

31.    Because senior management did nothing to correct VP Glennon's sexually inappropriate and abusive behaviors, Plaintiff chose to suffer VP Glennon's sexist and sexually offensive conduct because—especially as to his juvenile[1] and "old boys club" behaviors—Plaintiff calculated that these were best simply to be endured.

32.    Plaintiff feared that if she were to formally complain about VP Glennon, that she would be risking her job and the career she had built at Phelps Hospital.

33.    It is common knowledge—and especially well-described in the "Me Too Movement"—that a woman's accusing her boss of being a sexist harasser is often destructive to

---

[1] VP Glennon's juvenile behavior may reflect the fact that, upon information and belief, even though he was a high level hospital official, he has only a high school education.

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM

NYSCEF DOC. NO. 22

INDEX NO. 2022-52531

RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 6 of 20

R. 230

the woman's job and often her career.

34.     Thus, Plaintiff took no formal action until early 2022.

35.     This was some time after she suffered a catastrophic health problem.

**C. Plaintiff's brain surgery triggers VP Glennon's disability bias**

36.     Prior to the events of 2021 and 2022, Plaintiff had the great misfortune of becoming severely ill due to a brain tumor.

37.     The tumor was discovered.

38.     Fortunately, the tumor was operable, and so Plaintiff underwent brain surgery.

39.     As a result, the aftermath of the brain surgery was that Plaintiff suffered brain-surgery-related disabilities.

40.     After the surgery, Plaintiff was no longer as physically attractive,[2] because Plaintiff had for a time become totally blind, suffered some (perhaps) permanent facial paralysis and some other physical impairments.

41.     Upon information and belief, because Plaintiff was less physically attractive to VP Glennon than before her surgery, VP Glennon's disability bias surfaced —bias against Plaintiff as a partially handicapped person.

42.     Specifically, VP Glennon began to direct obnoxious jokes and comments at Plaintiff based upon her brain-surgery-related disabilities.

43.     For example, some of VP Glennon's disability-related comments and actions directed at Plaintiff included:

          a.   He accused her of having memory failure when VP Glennon knew full well

---

[2] At least in the eyes of a male chauvinist who views a woman's attractiveness solely in terms of her being a sex object.

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22
INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 7 of 20

R. 230

that she did not;

b.  He mocked Plaintiff's deafness in public;

c.   He mocked that Plaintiff suffered temporary blindness;

d.  He would make inappropriate comments such as "you are a mess" (relating to Plaintiff's disabilities);

e.  He began to make clear his desire to remove Plaintiff from her position of Director, and to replace Plaintiff with an able-bodied, non-disabled (and perhaps sexually attractive woman willing to suffer his sexism);

f.  He wrote an inaccurate, and in some respects materially false, performance evaluation created with the obvious intent of justifying Plaintiff's removal from her position of Director.

44.  This disability animus by VP Glennon directed at Plaintiff continued throughout 2021 and into January and February 2022.

45.  With the "handwriting on the wall" regarding VP Glennon's unlawful bias against her, Plaintiff decided it was time to make a formal complaint.

**D. Disability-related harassment by VP Glennon became intolerable**

46.  As mentioned above, Plaintiff had previously informally reported VP Glennon's sexual harassment to senior management at Phelps Hospital, including discussing this directly with the hospital CEO and Assistant CEO.

47.  However, after Plaintiff's disabilities arose, VP Glennon's sexual harassment was transformed into intolerable disability-related harassment, as set forth above.  Plaintiff could not tolerate this abuse.

48.  As a result, Plaintiff complained to Northwell Health's human resources department on February 2, 2022.

49.  Plaintiff complained to Phelps Hospital's corporate headquarters because Phelps Hospital's human resources personnel and Phelps Hospital senior leadership did nothing to protect her.

50.  To Plaintiff's chagrin, after her formal complaint Defendants' corporate

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22
INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 8 of 20

R. 230

headquarters also sided with VP Glennon, and instead of correcting VP Glennon's behavior, the Defendants retaliated against Plaintiff.

51.     This was notwithstanding the fact that Plaintiff was very well-regarding by co-workers, subordinate staff and patients, and until she complained of unlawful reprisal, was well-regarded by Phelps' higher management as reflected by consistently "excellent" performance reviews.

### E.  Defendants' Reprisal—Pretextual criticism and demotion to Clinical Therapist

52.     Rather than investigate and then correct the offensive conduct engaged in by VP Glennon, the Defendants took actions designed to eliminate Plaintiff from his workforce.

53.     The corporate defendants reasonably knew that Plaintiff was the victim of unlawful discrimination.

54.     Both knew this because of Plaintiff's allegations (supported by documentary and other evidence) and also because, upon information and belief, other female employees had similarly encountered and complained about VP Glennon's sexism and sexual harassment, including but not limited to *quid pro quo* sexual harassment.

55.     Because the corporate defendants reasonably knew that terminating Plaintiff's employment would clearly be viewed as unlawful reprisal, Defendants instead engaged in a strategy designed to coerce Plaintiff into "voluntarily" departing her employment.

56.     Additionally, Phelps Memorial could not fire Plaintiff, as a management level employee, without Northwell's approval of such job termination.[3]

---

[3] *See*, Phelps Memorial's amended articles of incorporation.

**R. 230**

57.     Thus, the corporate Defendants' strategy included a) making false and pretextual accusations against Plaintiff, and then, based upon such false and pretextual grounds, b) demoting her 4 levels, to the clinical job of staff therapist, in order to c) humiliate her into resigning her employment.

### a. *VP Glennon's defense to Plaintiff's internal complaint—to critique her*

58.     Plaintiff complained to corporate headquarters about VP Glennon in early 2022.

59.     In or around February 2, 2022, VP Glennon falsely reported to Northwell that Plaintiff was "defaming" him as being an "adulterer" knowing that both Plaintiff and other women had complained about VP Glennon's prior sexual harassment.

60.     At that time, VP Glennon threatened Plaintiff by informing her that if she did not somehow rectify the alleged defamation and withdraw her Northwell's ACC and "ethicspoint"/ethics forums complaints against him, that he would retaliate with his own complaint with Northwell against Ms. Dinu.

61.     Plaintiff did not withdraw her complaint and so VP Glennon, as he warned, then filed his own complaint against Plaintiff  in connection with her Phelps Hospital employment, falsely alleging wrongdoing by Ms. Dinu; Defendants concocted bogus and pretextual criticisms of Plaintiff.

62.     Such false assertions by VP Glennon included::

a.  that Plaintiff was insubordinate toward a superior (VP Glennon) by ignoring him, when in fact he was speaking into Plaintiff's deaf ear and she did not hear him;

b.  that Plaintiff was insubordinate by "yelling" at VP Glennon when Plaintiff was not disrespectful, and intended no disrespect, but instead was likely speaking in a loud voice because it is has become difficult for Plaintiff to realize how loudly she is speaking due to her recent partial deafness.

c.  That Plaintiff was making false statements about VP Glennon (e.g., relating to his own unprofessionalism and workplace sexual misconduct).

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM

NYSCEF DOC. NO. 22

INDEX NO. 2022-52531

RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 10 of 20

R. 230

63.    As a result of her complaints against him, VP Glennon, with the aid of the individual Defendants named herein, engaged in active reprisal.

### b.    Management's Reprisal-- false and pretextual accusations against Plaintiff

64.    Specifically, VP Glennon, with the aid of Northwell and the individual defendants, asserted that Plaintiff was acting unprofessionally and defaming VP Glennon.

65.    In this regard, Phelps Memorial and Northwell claim to have uncovered proof, in the form of texts sent by Plaintiff to a friend (or person she thought was a friend).  Phelps Memorial and Northwell implied that such statements were from many of Plaintiff's subordinates.

66.    This was a misrepresentation, as texts viewed as critical of VP Glennon (and which also corroborated Plaintiff's upset with him) were, upon information and belief, sent to only one (or perhaps two) individuals.

### c.    Demotion

67.    As a result of this non-impartial "investigation" by Northwell, aided by Defendants Dowling, Egan, Feiertag, Glennon and Bassinas—which "investigation" did not consider Plaintiff's side of the story—Plaintiff was demoted four levels, to staff therapist, on May 2, 2022.

68.    Before being demoted, Plaintiff was offered a "program manager" position, which she declined.

69.    Phelps Hospital's demoted Ms. Dinu on May 2, 2022 after her attorney complained on her behalf of unlawful discrimination by Phelps Hospital/ Northwell/ Dowling on May 1, 2022.

70.    Thus, the reprisal for complaining of discrimination and reprisal was immediate.

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 11 of 20

INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

R. 230

### d. Blacklisting in Northwell healthcare system

71.    Subsequently, Plaintiff has been informed by Northwell's human resources personnel that she is ineligible to be considered for re-appointment to her previous the position of Director, and ineligible for any management position within the entire Northwell healthcare system.

72.    Specifically, on July 29, 2022, Phelps Hospital Director of Human Resources Patrizia Musilli wrote Plaintiff in an email as follows:

> Hello Paula,
> Leadership has completed its review of applications for the Director of Speech role. Unfortunately, because you are in a disciplinary status, our policies deem you ineligible for a career move, including a promotional opportunity into the Director role. In addition, the disciplinary warning that was issued on May 2 was based on a finding that your conduct in the department was <u>inconsistent with Northwell's expectations</u> of a leader and, as such, we are unable to consider you for this leadership role. (*emphasis added*)

73.    Before the next business day, by email dated July 31, 2022, Plaintiff replied to Ms. Musilli's email by writing a letter to Northwell Health CEO Dowling, which letter included, in relevant part, as follows:

> Dear Mr. Dowling,
>
> In request your intervention to correct an injustice against me as a dedicated and loyal employee of Northwell Health. Until recently, I was the Director of Speech and Audiology at Phelps Hospital. After I complained of unlawful discrimination and reprisal against me, I was removed from the position of Director.
>
> I am informed by Phelps Hospital's HR Director that I am "in a disciplinary status" and that I received a "disciplinary warning" issued on May 2, 2022, that accused me of engaging in "conduct in the department … inconsistent with Northwell's expectations of a leader…" and that therefore Northwell Health is "unable to consider [me] for this leadership role."
>
> As to the above, first, the accusations against me are incorrect, and second, to the extent that management and human resources officials at Northwell Health and Phelps Hospital desire to act in good faith and lawfully as to my job application for the Director's position, they should consider the physical impairments that I developed (e.g., partial deafness and panic disorder) after undergoing brain surgery in 2018.

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22

INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 12 of 20

R. 230

I am informed that I am entitled to a "reasonable accommodation" regarding my actual or perceived disabilities. Because my actual or perceived disability is the only good faith justification that Northwell Health might have for its disciplinary action against me, Northwell Health must have a dialogue with me about how and why my actual and perceived disabilities have resulted in unfair criticism of me, and how my actual or perceived disabilities can and should be accommodated regarding my pending application for the position of Director.

Your assistance will be much appreciated.

Sincerely yours,

/s/ Paula Dinu, MS-CCC/SLP, BCS-S

cc: Phelps CEO Eileen Egan, Asst. CEO Feiertag and Patrizia Musilli

74.    Plaintiff hoped that CEO Dowling would consider her letter and correct the wrong. Based upon Plaintiff's letter to Northwell Health's CEO Dowling, Plaintiff's job application for the position of Director should have been favorably considered, with Northwell Health engaging in the dialogue required to reasonably accommodate any perceived and actual disabilities of Plaintiff.

75.    CEO Dowling indicated to Plaintiff that he would reply to Plaintiff's concerns, but thereafter did not directly do so.

### e.  Post-demotion reprisal

76.    The corporate Defendants' obvious intention in demoting Plaintiff was to shame and humiliate Plaintiff into departing her Phelps Hospital employment.

77.    However, because Plaintiff did not immediately resign after being demoted, Defendants engaged in conduct designed to humiliate and embarrass Plaintiff, for example, requiring Plaintiff (the former department head) to sit at the front desk as if she were a receptionist or clerk.

78.    Because Defendants did not reduce Plaintiff's salary, upon information and belief Defendants calculated that as a matter of law, Phelps Hospital could claim that

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM

NYSCEF DOC. NO. 22

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 13 of 20

INDEX NO. 2022-52531

RECEIVED NYSCEF: 12/01/2022

R. 230

it took no "adverse job action" against Plaintiff and, if Plaintiff resigned, that such was not a "constructive discharge."

79.    Upon information and belief, Northwell Health CEO Dowling was aware of, or has become aware of, this unlawful and retaliatory action toward Plaintiff, and yet has done nothing to correct it.

80.    Defendants Egan, Feiertag, Glennon and Bassinas were orchestrating the abusive and humiliating actions toward Plaintiff, including the directions and tasks given to her regarding her new job as therapist.

81.    Yet Plaintiff chose not to be bullied into resigning her employment for opposing unlawful discrimination and retaliation.

82.    Plaintiff has not resigned her employment, but instead has continued working in the capacity of a therapist.

83.    Yet it was clear that Defendants wished Plaintiff gone, and thus engaged in tactics designed to provoke her to resign, or to force her to resign by wearing her out emotionally, knowing that she was suffering psychologically.

84.    As an example of Defendants' bad faith and discriminatory animus, they attempting to "bait" Plaintiff into doing something wrongful (e.g., induce her to ignore patients' HIPPA rights), so that it could then justify terminating her employment.

85.    As another example of Defendants' bad faith and discriminatory animus, they claimed that Plaintiff "left work early" when she did not.

86.    As the culminating example of Defendants' bad faith and discriminatory animus, the corporate Defendants claimed that Plaintiff "endangered a six year old patient" (or words to that effect) when, on October 20, 2022, Plaintiff sought to ensure the safety of the six year old by

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22
INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 14 of 20

R. 230

ensuring that a pediatric-trained radiology technician would be present for a procedure Plaintiff was informed she would be handling (due to her expertise) that day.

87.     Instead of simply answering Plaintiff's reasonable inquiry to ensure the presence of a pediatric-trained radiology technician, Plaintiff was instead verbally assaulted by Defendant Bassinas, causing an acute anxiety reaction in Plaintiff (a psychological condition Defendants were aware of) followed by false accusations that Plaintiff had committed misconduct by "refusing to do her job" (or words to that effect).

88.     An inquiry such as was made by Plaintiff was of a very ordinary sort.  All that was required was a simple response.

89.     Instead, Defendants characterized Plaintiff's mere question as "refusal to work" and as a result suspended her without pay and ultimately, in January 2023, fired her.

### f.   *ADA non-accommodation*

90.     Northwell and Phelps Memorial also refused to reasonably accommodate Plaintiff's psychological disability.

91.     In particular, Northwell and Phelps Memorial refused to accommodate (or even discuss) Plaintiff's requests for a reasonable accommodation (e.g., transfer to a different Northwell facility) regarding her acute stress disorder, which requests were made after her attorney filed suit against Northwell on July 31, 2022 ("*Dinu I*"), alleging unlawful discrimination against her.

### F.  **Northwell and Phelps Memorial animus reflected by their counsel**

92.     After Plaintiff's demotion, and after she filed suit on July 31, 2022, the attorneys for Northwell and Phelps Memorial engaged in conduct designed to obstruct Plaintiff's ability to seek justice in the courts.

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM INDEX NO. 2022-52531
NYSCEF DOC. NO. 22 Case 7:25-cv-03281-JGLC Document 1 Filed 04/21/25 Page 15 of 20 RECEIVED NYSCEF: 12/01/2022

R. 230

93.     One example is that they agreed to waive service, but then reneged after the limitations period expired.

94.     Another example is Northwell's counsel (Ms. Traycee Klein[4]) indicating that Northwell and Phelps Memorial were separate "stand alone" entities, which is not the case.

95.     Another example is Ms. Klein's indicating that Northwell had no power to transfer Plaintiff's place of employment (as a reasonable accommodation for her disability), which was not true.

96.     This conduct is further evidence of Defendants' discriminatory and retaliatory animus against Plaintiff.

## G. *Dinu III* state court action non-dispositive here

97.     As to the October 20, 2022 incident involving Plaintiff seeking to ensure the safety of a six year old Phelps Hospital patient, retaliation for a) Plaintiff's "whistle-blowing" efforts to warn her employer that it must not violate the law (N.Y.S. Labor Law § 740) and b) for Plaintiff's seeking to protect the hospital patient (Labor Law § 741) is unlawful.

98.     Accordingly, Plaintiff was commenced *Dinu v. Phelps Memorial Hospital Association*[5] ("***Dinu III***") seeking redress for the Labor Law violations.

99.     Regardless of how *Dinu III* is adjudicated, it will not be dispositive of this case.

100.    If, for example, the *Dinu III* court finds no violation of the Labor Law, that will not mean that it finds that Ms. Dinu did wrong, and even if the state court were to find that Plaintiff did wrong, that still would not address the factual issue here, namely, whether the Defendants' accusations were a pretext for discrimination.

---

[4] Ms. Klein represents both Northwell and Phelps Memorial.

[5] Westchester County Supreme Court Index No. 55525/2025 (amended summons filed April 20, 2025).

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22
INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 16 of 20

R. 230

101.    To state it metaphorically, even if Plaintiff committed misconduct—in the form of jaywalking—such does not justify the death penalty.

102.    On the other hand, if the state court upholds Plaintiff's Labor Law claims, such a finding will collaterally estop Northwell and Phelps Memorial from arguing that it had a legitimate business reason for terminating Plaintiff's employment—and thus will satisfy one element of proof in a *McDonnell Douglas* burden shifting framework.

### H.  Damages

103.    Because of the unique skills possessed by Plaintiff, and the scarcity of jobs that require her skill set, Plaintiff has been unable to find comparable replacement employment, notwithstanding her diligent efforts.

104.    The fact that Plaintiff appears to be blacklisted in the Northwell healthcare system has been a major obstacle to her locating comparable new employment.

### I.  "Right to Sue" Letter

105.    Plaintiff filed a charge of discrimination with the EEOC on November 2, 2022, and subsequently filed a supplemental charge of discrimination and reprisal.

106.    As to her EEOC charges, Plaintiff has now received a Notice of Right To Sue,  issued by the EEOC by letter dated January 30, 2025, a copy of which is attached hereto as <u>Exhibit</u> "1".

FIRST CLAIM FOR RELIEF—
DISABILITY DISCRIMINATION
IN VIOLATION OF THE AMERICANS WITH
DISABILITIES ACT OF 1990 ("ADA"), 42 U.S.C. § 12101 *et. seq.*

107.    Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

108.    Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM

NYSCEF DOC. NO. 22

INDEX NO. 2022-52531

RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 17 of 20

R. 230

109.    The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq.,
enforceable under 28 U.S.C. § 1331 and 1343(4), protects individuals from employment
discrimination based upon physical or mental disability, or based upon being perceived as or
having a record of such disability.

110.    Plaintiff had one or more psychological and physical disabilities known to
Defendant—namely, Major Depression—which illnesses, separately and together, substantially
limited one or more major life activities of Plaintiff; which was so perceived by Defendants,
whom also had a record of such disabilities.

111.    Plaintiff was terminated due to her disabilities, perception thereof and record
thereof.

112.    Plaintiff was damaged thereby.

### SECOND CLAIM FOR RELIEF— GENDER DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000e

113.    Plaintiff repeats and reiterates each of the allegations above as if fully repeated
here at length.

114.    Plaintiff is a female who was discriminated against and retaliated against on
account of her gender.

115.    Defendants' justification for Plaintiff's termination was, upon information and
belief, pretextual and a sham.

116.    As a proximate result of Defendants' actions, Plaintiff has been unable, despite
reasonable efforts, to find comparable employment.

117.    As a further proximate result of Defendants' discrimination against Plaintiff,
Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22
INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 18 of 20

R. 230

future earnings, bonuses, deferred compensation, and other employment benefits.

118.    As a further proximate result of defendants' actions, Plaintiff has suffered

and continues to suffer severe and lasting embarrassment, humiliation and anguish, and

other incidental and consequential damages and expenses.

119.    Plaintiff has been damaged thereby.

120.    The conduct of defendants was wanton, outrageous and malicious, was

intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's

protected civil rights, entitling Plaintiff to an award of punitive damages.

### THIRD CLAIM FOR RELIEF—
### RETALIATION IN VIOLATION OF
### 42 U.S.C. § 2000e and the ADA

121.    Plaintiff repeats and reiterates each of the allegations above as if fully

repeated here at length.

122.    Plaintiff's reported and objected to unlawful discrimination against

Plaintiff and others, and had an objective and reasonable belief that defendant was

engaged in conduct unlawful under Title VII and the ADA.

123.    Plaintiff opposed such unlawful conduct by making good faith claims or

complaints of discrimination to defendant.

124.    As a consequence, defendant engaged in adverse treatment of Plaintiff.

125.    Plaintiff was damaged thereby.

### FOURTH CLAIM FOR RELIEF—
### SUPPLEMENTAL NEW YORK STATE HUMAN RIGHTS LAW CLAIM

126.    Plaintiff repeats and realleges each of the allegations above as if fully

repeated here at length.

127.    Defendant's disparate treatment of Plaintiff on the basis of her gender and

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM

NYSCEF DOC. NO. 22

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 19 of 20

INDEX NO. 2022-52531

RECEIVED NYSCEF: 12/01/2022

R. 230

disability and perceived disability was in violation of the New York State Human Rights Law. *See*, N.Y.S. Exec. Law § 296 *et seq*.

128.    Defendant's reprisal against Plaintiff for complaining about gender and disability bias was in violation of the New York State Human Rights Law. *See*, N.Y.S. Exec. Law § 296 *et seq*.

129.    Defendants have both taken the position that the original complaint in *Dinu I* was and remains the operative complaint, which complaint contained Ms. Dinu's allegations of gender and disability bias and reprisal.

130.    The *Dinu I* case is still on appeal, and there has not been finally "dismissed" by the N.Y.S. courts for limitation purposes.

<u>Aiders and Abettors</u>

131.    The individual Defendants are aiders and abettors under the state Human Rights Law.

132.    Plaintiff was damaged thereby.

**JURY DEMAND**

Plaintiff requests trial by jury in this action.

WHEREFORE, Plaintiff prays that this Court grant judgment in Plaintiff's favor containing the following relief:

1.    An award of Plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including back pay, and also an award of back pay and front pay compensating Plaintiff for loss of past and future salary and benefits;

2.    An award of damages to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3.    An award of punitive damages;

4.    An order enjoining defendants from engaging in the wrongful practices alleged herein and to reinstate Plaintiff's employment with Defendant;

FILED: DUTCHESS COUNTY CLERK 12/01/2022 03:30 AM
NYSCEF DOC. NO. 22

INDEX NO. 2022-52531
RECEIVED NYSCEF: 12/01/2022

Case 7:25-cv-03281-JGLC    Document 1    Filed 04/21/25    Page 20 of 20

R. 230

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Such other and further relief as this Court may deem just and proper.

Dated:  Stony Point, New York
        April 21, 2025

                              _____/S *Michael Diederich, Jr.* /
                              MICHAEL D. DIEDERICH, JR.
                              *Attorney for Plaintiff  MD 2097*
                              DIEDERICH LAW OFFICE
                              361 Route 210
                              Stony Point, NY 10980
                              (845) 942-0795
                              Mike@DiederichLaw.com

Attachments
  Exhibit "1" – Right to Sue Letter